UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION

| | |
|---|---|
| CLIFFORD HOSKINS, *et al.*, | CIVIL ACTION NO. 6:17-CV-304-KKC |
| Plaintiffs, | |
| V. | **MEMORANDUM OPINION AND ORDER** |
| 3M COMPANY, *et al.*, | |
| Defendants. | |

| | |
|---|---|
| BURNIS HALL, *et al.*, | CIVIL ACTION NO. 7:18-CV-09-KKC |
| Plaintiffs, | |
| V. | |
| 3M COMPANY, *et al.*, | |
| Defendants. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on motions to remand and for attorneys' fees and costs filed in the two above-referenced actions. For the reasons discussed below, the Court will grant the motions to remand but deny the motions for attorneys' fees and costs in each action.

I. Background

Plaintiffs are former coal workers who claim that they suffer from pneumoconiosis—more commonly known as Black Lung—due to the use of defective dust mask respirators they wore as coal miners to protect themselves from exposure to coal rock and sand dust. The Plaintiffs in both actions named as defendants 3M Company, who they allege manufactured the

defective respirators, and Mine Service Company, Inc. ("MSC"), who they alleged redistributed the masks in Kentucky.[1] The citizenship of the parties is not in dispute. The Plaintiffs are all citizens of Kentucky while 3M and the other respiratory manufacturer defendants are citizens of other states. The Supplier Defendants, MSC and KMSC, however, are Kentucky corporations.

Prior to removal, the Plaintiffs' claims were at various stages in state court litigation. In the *Hoskins* case, Bud Napier's claim was set for trial beginning January 22, 2018. Napier and the Defendants' had agreed that expert witness disclosure would occur by August 22, 2017 and all pretrial motions and discovery would be completed by October 31, 2017. In accordance with those deadlines, Napier filed expert disclosures on August 22, 2017. However, he did not disclose any experts who would specifically address liability claims against the Supplier Defendants.

In the *Hall* case, the claims of Leslie Cox and Michael Cox were set for trial beginning April 2, 2018, in Knott Circuit Court. The Coxes disclosed the identity and opinions of their expert witnesses on November 6, 2017—the Coxes experts were the same as those previously disclosed by Napier in the *Hoskins* case. No pretrial deadlines have been set for any other Plaintiffs in either case, and they have not yet been required to disclose experts.

3M removed the *Hoskins* action on November 1, 2017, and removed the *Hall* action on January 26, 2018. In both notices of removal, 3M conceded that the action lacked complete diversity of citizenship because the Plaintiffs and the supplier Defendants, MSC in both cases and KMSC in the *Hoskins* case, were all Kentucky citizens. 3M claims that the *Hoskins* case became removable on October 31, 2017, upon close of discovery for Napier's claim. Similarly, 3M argues that the *Hall* case became removable at the close of discovery, and the grounds

---

[1] The *Hoskins* case involves two Kentucky suppliers: MSC and Kentucky Mine Supply Company ("KMSC").

for diversity jurisdiction were not apparent until December 29, 2017, and January 19, 2018—the dates that fact and expert discovery closed on the Coxes' claims. 3M argues that, on these dates, it became apparent that MSC, and KMSC as to the *Hoskins* case, were fraudulently joined to defeat diversity, given the Plaintiffs' failure to pursue claims against these Defendants. 3M further argues that the remaining Plaintiffs in each case lack a nexus to the claims of Napier and the Coxes, respectively, and were fraudulently misjoined.

## II. Analysis

### A. *Standard for removal and fraudulent joinder*

Federal courts are courts of limited subject matter jurisdiction. While the federal removal statute, 28 U.S.C. § 1441, generally grants defendants the right to remove cases from state to federal court, removal is proper only if the district court would have had original jurisdiction over the case. *Id.* 1441(a). In an action that does not involve a federal question, this Court has original jurisdiction based on diversity of citizenship only if there is complete diversity between the parties. 28 U.S.C. § 1332(a). That is, no plaintiff and no defendant may be citizens of the same state. *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999). In order for a defendant to remove a case based on diversity of citizenship jurisdiction, complete diversity must exist at both the time the case is commenced in state court and the time of removal. *Id.* The burden of establishing jurisdiction falls on the removing party. *Eastman v. Marine Mech. Corp.*, 438 F.3d 54, 549 (6th Cir. 2000). And, because of the federalism concerns implicated by removal, "all disputed questions of fact or ambiguities in the controlling . . . state law" must be resolved "in favor of the non removing party." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1996) (quoting *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)) (alteration in original).

3M concedes that there was not complete diversity of citizenship at the time these suits were commenced. All plaintiffs and the Supplier Defendants are citizens of Kentucky.

Consequently, 3M invokes the "judicially created doctrine" of fraudulent joinder, which "provides an exception to the requirement of complete diversity" as the basis that removal is proper. *Coyne*, 183 F.3d at 493 (quoting *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)). Fraudulent joinder permits removal of a case that lacks complete diversity if the removing party demonstrates that "the non-removing party join[ed] a party against whom there is no colorable cause of action." *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009) (citing *Jerome-Duncan*, 176 F.3d at 907). In other words, the test for fraudulent joinder "is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Alexander*, 13 F.3d at 949 (quoting *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir. 1968)). If the answer is yes, the federal courts lack jurisdiction and must remand the action to the state courts.

B. *Plaintiffs' claims against the Supplier Defendants*

Kentucky's so-called "middleman" statute provides additional protection for wholesalers, retailers, and distributors who are alleged to have sold defective products. Ky Rev. Stat. § 411.340. The statute relieves middlemen where:

> (1) the manufacturer is "identified and subject to the jurisdiction of the court[;]" (2) the product was sold "in its original manufactured condition . . . or in the same condition such product was in when received . . ." by the middleman; and, (3) the middleman has neither "breached an express warranty . . ." nor "knew or should have known at the time of distribution or sale . . . that the product was in a defective condition, unreasonably dangerous to the user or consumer."

*Worldwide Equipment, Inc. v. Mullins*, 11 S.W.3d 50, 60 (Ky. App. 1999) (citing Ky. Rev. Stat. § 411.340) (alterations in original).

Plaintiffs argue that they have stated a colorable claim under Kentucky's middleman statute against the Supplier Defendants. There is no dispute as to the first element of the middleman statute. With regard to the second element, Plaintiffs claim that, based on

4

interrogatories submitted by the Supplier Defendants in 2005, during the course of prior litigation, it can prove that the Supplier Defendants distributed respirators manufactured by 3M to Plaintiffs' employers. Plaintiffs also contend that they will be able to show the Supplier Defendants "should have known" that 3M's 8710 respirators were not fit for their intended use in coal mines. Plaintiffs state that they intend to introduce evidence, through the testimony of the Supplier Defendants' employees, that they knew the mine equipment they supplied would be relied on by users to protect their health and safety. They claim that this evidence will support an inference that the distributors should have made some type of investigation into whether the product would perform as intended. And, finally, they intend to present evidence that even a minimal investigation by the Supplier Defendants would have revealed to them that the 3M 8710 respirators were defective.

In order to establish fraudulent joinder, 3M must show that there is no reasonable basis for predicting that a factfinder *might* find that the Supplier Defendants sold the allegedly defective respirators or that the they "should have known" that the respirators were defective. *See Alexander*, 13 F.3d at 949. 3M claims that the interrogatories relied on by Plaintiffs are stale and do not show that Plaintiff wore an allegedly defective 3M respirator sold by the Supplier Defendants. This argument does not meet the high burden necessary to establish fraudulent joinder. A jury could reasonably infer from the interrogatories proffered by Plaintiffs' that the Supplier Defendants sold defective dust masks to Plaintiffs' employer. MSC's interrogatory concedes that "prior to 1997 MSC believes that, from time-to-time, it sold dust respirators or dust masks manufactured by 3M. Any dust respirators or dust masks that MSC may have sold which were manufactured by 3M were sold in their original condition . . . ." (No. 6:17-CV-304-KKC, DE 6-9, at 1-2).[2] While this does not conclusively

---

[2] Similarly, KMSC's interrogatory states that it "has occasionally-on an extremely rare basis-sold or supplied dust masks or respirators manufactured by 3M." (DE 6-10, at 1). And KMSC identifies Leeco Inc., which Napier claims

establish that the Supplier Defendants are liable, a reasonable jury could conclude, based on this evidence, that MSC supplied Plaintiffs' employers with defective 3M respirators. 3M's arguments to the contrary, such as the staleness of the interrogatories or that the Supplier Defendants' have not unequivocally stated that they supplied 3M respirators to Plaintiffs' employers, go only to the weight of the evidence. It is also irrelevant that Plaintiffs do not intend to introduce the actual interrogatories of the Supplier Defendants at trial. The interrogatories merely inform the Court that Plaintiffs are able to call fact witnesses from the Supplier Defendants who can testify in a similar manner at trial.[3]

Plaintiffs are also able to make colorable claims that the Supplier Defendants "knew or should have known" that the 3M respirators were "in a defective condition, unreasonably dangerous to the user or consumer." Ky. Rev. Stat. § 411.340. Plaintiffs state that they intend to produce evidence which shows that, by the 1980s, it was well-known small particles of dust were harmful; that submicron particles common in coal mines; protection from inhalation of small particles requires a properly fitting mask; a proper fit requires multiple sizes, while 3M 8710 came in only one size; 3M 8710 was never reliably fit tested; and other indications that 3M 8710 was not suited for use in coal mines. 3M's response is that this evidence is too generalized to succeed under the middleman statute. This argument asks the Court to go beyond the limited inquiry permitted for assessing fraudulent joinder. There is at least a colorable basis that a jury could find the Supplier Defendants' liable based on the evidence presented by the Plaintiffs. 3M's reliance on *Mason v. Excel Indus., Inc.*, No. 3:10-CV-175, 2011 WL 847449 (W.D. Ky. Mar. 9, 2011), is misplaced. In that case, the court found that the alleged defect—mowers without a rollover prevention system—was obvious to any buyer. The

---

Stansbury / Mountain Clay obtained supplies from, was one of the coal mines to which KMSC supplied dust masks. (DE 6-10, App. A, at 5).

[3] For example, Plaintiffs have identified MSC President, Wallace Cornett, its former President, Keith Reynolds, and its former Vice President and Outside Salesman, Kermit Patrick, as fact witnesses.

Plaintiffs here, however, have presented evidence that a reasonable jury could find rebuts that argument. (No. 6:17-CV-304, DE 6-31, at 2 (memorandum from Area Office Industrial Hygienist stating that 3M's masks "are dangerous because the employee is lulled into a false sense of security—a belief he/she is being protected against hazardous airborne contaminants when, in fact, he/she is not."). It is possible, maybe even likely, that a jury will not find the Supplier Defendants should have known that the respirators were defective. But that does not meet the standard for fraudulent joinder. 3M has failed to show that there is no reasonable basis that a jury might find the Supplier Defendants liable. Accordingly, this Court lacks subject matter jurisdiction over these cases.

*C. 3M's "failure to prosecute" argument is not a basis for fraudulent joinder*

Unable to meet the burden of showing that Plaintiffs' claims against the Supplier Defendants are not colorable, 3M argues that a finding of fraudulent joinder is appropriate because of evidence that Plaintiffs do not intend to prosecute these claims in good faith. 3M, however, cites only one Sixth Circuit case in support of its argument that this is a proper standard for finding fraudulent joinder. In *Brady v. Indemnity Ins. Co. of N. Am.*, 68 F.2d 302 (6th Cir. 1933), the court stated "[i]n fraudulent joinder cases the underlying reason for removal is that there is no factual basis upon which it can be claimed that the resident defendant is jointly liable or where there is such liability there is no purpose to prosecute the action against the resident defendant in good faith." *Id.* at 303 (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921)). 3M has not identified any more recent Sixth Circuit case that has applied this formulation. And the *Brady* court itself did not apply this standard in finding that the defendants were not fraudulently joined. *Brady* merely stands for the proposition that filing a suit for an amount of controversy below the amount required for removal is not a fraud on the court. *Id.* ("Having the right to determine the amount she would

7

claim, the filing of a suit for such amount in the state court was not in our opinion a fraud on the jurisdiction of the federal court.").

Even if the Court were to apply this standard, it would not lead to a finding of fraudulent joinder. 3M accuses Plaintiffs of not developing evidence against the Supplier Defendants. Plaintiffs, however, possesses relevant discovery produced by the Supplier Defendants in prior litigation. Ultimately, 3M's argument is merely a criticism of Plaintiffs' discovery and litigation strategy. That is not a basis for finding fraudulent joinder.

*D. Plaintiffs' counsel's actions in prior litigation is not a basis for fraudulent joinder*

3M's final argument that this Court should find fraudulent joinder is that the Plaintiffs' counsel have an established pattern of suing Supplier Defendants, failing to pursue their claims against them, and then dismissing or abandoning those claims after the removal deadline has passed. 3M claims that this is sufficient to show that Plaintiffs lack a colorable basis for their claims against the Supplier Defendants, lack a good faith intention to pursue their claims, or are colluding with the Supplier Defendants to defeat diversity of citizenship jurisdiction.

As explained above, the only standard that the Sixth Circuit has articulated for fraudulent joinder is whether Plaintiff's lack a colorable basis for their claims. 3M's allegations about Plaintiffs' counsels' action in prior litigation says little about whether the claims against the Supplier Defendants are colorable. 3M relies largely on an Eastern District of Pennsylvania case in arguing that actions in prior litigation are sufficient evidence to find fraudulent joinder. *In re Diet Drugs*, 220 F. Supp.2d 414 (E.D. Pa. 2002). That case is readily distinguishable. There, before addressing counsel's actions in prior litigation, the court found that the plaintiff's complaints were "devoid of specific allegations against the pharmacies" and were "filled instead with generalized statements levied against all defendants which most properly can be read as stating claims against the drug manufacturers." *Id.* at 424. In

8

contrast, Plaintiffs' Complaints in these cases state specific allegations against the Supplier Defendants which could impose liability despite the immunity provided by the Kentucky middleman statute. That similar claims have failed in prior litigation, or have played a smaller part of the case as a litigation strategy, does not mean a reasonable jury could not find liability against the Supplier Defendants in these cases.

E. *3M has not shown that jurisdictional discovery is warranted*

3M also asks the Court to allow jurisdictional discovery in the event that the Court does not find fraudulent joinder. 3M believes discovery will uncover communications or documents which show collusion between the Plaintiffs and the Supplier Defendants. 3M claims an inference of collusion can be made at this point based on the Supplier Defendants lack of appearance at key depositions and their failure to file motions for summary judgment in prior litigation. They also suggest, without evidence, that prior settlements between Plaintiffs' counsel and the Supplier Defendants were nominal or not paid.

Jurisdictional discovery is not warranted in this case. Not attending a deposition or not moving for summary judgment does not suggest collusion between parties. Both can be attributed to litigation strategy. More importantly, however, jurisdictional discovery has been called into question in this district as an "anathema to the limited nature of federal jurisdiction and the need to respect the authority of state courts." *May v. Wal-Mart- Stores, Inc.*, 751 F. Supp.2d 946, 949 (E.D. Ky. 2010). While there is no Sixth Circuit precedent on whether jurisdictional discovery to determine if removal is proper violates a federal courts limited jurisdiction, the Court declines the request to take such an extraordinary step where no actual evidence of collusion or fraud has been proffered by the 3M.

F. *Severance of Plaintiffs' claims is not proper*

In the event that this Court denies 3M's fraudulent joinder arguments, it asks the Court to sever the Plaintiffs' claims against the Supplier Defendants to retain diversity jurisdiction.

9

Rule 21 of the Federal Rules of Civil Procedure provides that "the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."[4] But the "authority to dismiss a dispensable nondiverse party . . . should be exercised sparingly." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 837 (1989). In making this determination, the Court must consider if severance of a nondiverse party will prejudice any of the parties to the litigation. *Id.* The Court must also be cognizant that "[i]n general, the plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue, subject only to the rules of joinder [of] necessary parties." *Lincoln Prop. Co. v .Roche*, 546 U.S. 81, 91 (2005) (quoting 16 J. Moore et al., Moore's Federal Practice § 107.14[2][c], p. 107–67 (3d ed. 2005)).

Severance is not appropriate in these cases. Severing the Plaintiffs' claims against the Supplier Defendants would require them to pursue litigation in two separate forums in order to obtain relief against all of the Defendants. This would require the Plaintiffs to duplicate their litigation efforts by forcing them to try the same case twice. The decision in *Mayfield v. London Women's Care, PLLC*, No. CIV.A. 15-19-DLB, 2015 WL 3440492 (E.D. Ky. May 28, 2015), upon which 3M relies, is distinguishable. In that case, the Court found that the plaintiff's claims of prejudice were outweighed by the "undeniable upside" of transferring the claims to an ongoing multidistrict litigation, where their cost and burden of litigating . . . would drop considerably, and Plaintiffs' ability to potentially negotiate a settlement would be greatly enhanced." *Id.* at *5. Those benefits do not exist in this case. Thus, the Court declines to sever Plaintiffs' claims.

G. *Fraudulent misjoinder would not create diversity jurisdiction*

---

[4] There is one limit on the Court's discretion to sever parties; the party must not be a necessary party under Rule 19. *Safeco Ins. Co. of Am. V. City of White House, Tenn.*, 36 F.3d 540, 546 (6th Cir. 1994).

3M's final argument is that the Court should apply the doctrine of fraudulent misjoinder to retain jurisdiction over Plaintiff Napier's claims in the *Hoskins* case and Plaintiffs Michael and Leslie Cox's claims in the *Hall* case by severing and remanding the remaining Plaintiffs' claims. That argument, however, is now moot because the Court has found that Napier and the Coxes have colorable claims against the Supplier Defendants. Thus, even applying fraudulent misjoinder to retain only the claims brought by Napier and the Coxes would have no effect because complete diversity would still be lacking.

*H. Plaintiffs are not entitled to fees and costs*

Having found that remand is required in this case, the Court now turns to Plaintiffs' request to award fees and costs. Plaintiffs' claim they are entitled to a fee award pursuant to 28 U.S.C. § 1447(c) because 3M removed these cases for strategic reasons. A party is entitled to a fee award "only where the removing party lacked an objectively reasonable basis for seeking removal." *Warthman v. Genoa Township Bd. Of Trustees*, 549 F.3d 1055, 1059 (6th Cir. 2008) (quoting *Martin v. Franklin Capital Corp.*, 549 U.S. 132, 141 (2005)). While the Court has rejected 3M's fraudulent joinder, severance, and fraudulent misjoinder arguments, they were not objectively unreasonable. To the contrary, all of 3M's arguments were colorable and supported by case law. That these arguments ultimately failed is not a sufficient basis for awarding fees.

**III. Conclusion**

For all of the above reasons, the Court **HEREBY ORDERS:**

(1) The Plaintiffs' motions to remand in the above-referenced actions are **GRANTED**;

(2) The Plaintiffs' motions for attorneys' fees and costs in the above-referenced actions are **DENIED**;

11

(3) Civil Action No. 6:17-CV-304-KKC is **REMANDED** to the docket of the Clay County Circuit Court;

(4) Civil Action No. 7:18-09-KKC is **REMANDED** to the docket of the Knott County Circuit;

(5) All remaining motions are **DENIED** as moot;

(6) These cases are **STRICKEN** from the Court's active docket.

Dated February 23, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY